**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ST. MARY'S OF MICHIGAN,

        *Plaintiff*,

    v.

ALEX M. AZAR, II,
Secretary of the United States Department of
Health and Human Services,

        *Defendant*.

Civil Action No. 1:18-cv-01790 (CJN)

## MEMORANDUM OPINION

St. Mary's of Michigan, a hospital in Saginaw, filed an administrative appeal of certain aspects of its reimbursement for Medicare and Medicaid services rendered in 2010.  *See generally* Compl., ECF No. 1.  An administrative board of the Department of Health and Human Services found that it lacked jurisdiction over the appeal and dismissed it.  *Id.*  St. Mary's now challenges that holding, arguing that the Board's action was arbitrary and capricious and contrary to law.  *Id.*  Both Parties moved for summary judgment.  *See* Pl.'s Mot. for Summ. J., ECF No. 14; Def.'s Mot. for Summ. J., ECF No. 15.  Because the Board correctly concluded that it lacked jurisdiction, the Court grants summary judgment to the government and denies it to St. Mary's.

### I.      Background

#### A.      Statutory and Regulatory Framework

St. Mary's participates in the Department of Health and Human Services' (HHS) Disproportionate Share Hospital (DSH) program, administered by the Centers for Medicare &

Medicaid Services (CMS).[1]  *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.  The DSH

program "provide[s] . . . for an additional payment amount for each [eligible] hospital which . . .

serves a significantly disproportionate number of low-income patients."  42 U.S.C.

§ 1395ww(d)(5)(F)(i)(I).  "The DSH adjustment 'is made because hospitals with an unusually

high percentage of low-income patients generally have higher per-patient costs; [and][] Congress

therefore found [that such hospitals] should receive higher reimbursement rates.'"  *McLaren*

*Flint v. Azar*, C.A. No. 18-2005, 2020 WL 2838566, at *2 (D.D.C. May 31, 2020) (quoting

*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 150 (2013)).

       To determine the extent of the DSH adjustment, HHS must evaluate the total percentage

of inpatient care a hospital renders to two categories of patients in a given year:  (1) Medicare

"Part-A-entitled patients who [are] *also* entitled to income support payments under the Social

Security Act," *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1809 (2019) (citing 42 U.S.C.

§ 1395ww(d)(5)(F)(vi)(I)), (the "Medicare" or "SSI Fraction"), and (2) "Medicaid patients—

who, by definition, are low income—[who are] *not* entitled to Medicare," *Allina Health Servs. v.*

*Sebelius*, 746 F.3d 1102, 1105 (D.C. Cir. 2014).  To compute the two fractions, hospitals divide

the number of days of inpatient care for each group by the total number of days of inpatient care

provided that year.  *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 3 (D.C. Cir. 2011).  They then add

the two fractions together to determine their total eligibility for augmented reimbursements.  *Id.*

       HHS contracts with private companies to serve as Medical Administrative Contractors,

financial intermediaries who calculate these figures and work with providers in particular

---

[1] Because these issues are frequently litigated in this District, the Court includes only the most
relevant portions of the statutory and regulatory background.  Judge Moss's recent opinion
provides an exhaustive explanation of the legal context.  *See McLaren Flint v. Azar*, C.A. No.
18-2005, 2020 WL 2838566, at *1–4 (D.D.C. May 31, 2020).

geographic regions.  *Auburn*, 568 U.S. at 150.  After receiving a hospital's "cost reports" and

CMS data, the intermediary calculates "the total payment due" to the hospital.  *Id.*  It then issues

a "Notice of Program Reimbursement" (NPR) to the hospital to explain "how much [the

hospital] will be paid for the year."  *Id.*

Hospitals may appeal an NPR in one of two ways.  If a hospital is "dissatisfied with a

final determination . . . as to the amount of total . . . reimbursement due," the hospital may appeal

the NPR to HHS's Provider Reimbursement Review Board within 180 days.  42 U.S.C.

§§ 1395oo(a).  "[T]he Board may modify any matter covered by the provider's cost report for the

fiscal year at issue 'even though such matter [ ] w[as] not considered by the intermediary in

making such final determination.'"  *HCA Health Servs. of Okla., Inc. v. Shalala*, 27 F.3d 614,

615 (D.C. 1994) (quoting 42 U.S.C. § 1395oo(d)).  If several providers appeal an issue with

common factual or legal questions, HHS may consolidate them into a group appeal.  42 U.S.C.

§ 1395oo(b).  Once the Board has resolved the appeal, providers may file a further appeal to the

CMS Administrator and, if unhappy with the outcome, may petition for judicial review in the

federal district court.  *Id.* § 1395oo(f)(1).  If a provider opts not to file an appeal, the NPR

becomes final after 180 days.  *Id.* § 1395oo(a)(3).

Alternatively, a provider that chooses not to appeal to the Board (or that misses the 180-

day window) may petition the intermediary within three years of the NPR's issuance to "reopen"

the determination for the limited purpose of reviewing specific findings.  42 C.F.R.

§§ 405.1885(a)–(b).  The intermediary may deny the request or narrow it to specific issues.  *Id.*

§ 405.1885(a)(1).  "If a matter is reopened and a revised determination . . . is made, [the] revised

determination . . . is appealable" to the Board within a new 180-day window, *id.*

§ 405.1885(a)(5), but "[o]nly those matters that are specifically revised . . . are within the scope

of any appeal of the revised determination," *id.* § 405.1889(b)(1).  "Any matter that is not specifically revised (including any matter that was reopened but not revised) may not be considered in any appeal of the revised determination."  *Id.* § 405.1889(b)(2).

In other words, if a hospital appeals its NPR to the Board within 180 days, it may raise any issue.  But if it waits or declines to appeal to the Board, the hospital must ask the intermediary to change its mind and may only appeal to the Board those changes the intermediary *actually* made.  *See generally Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449 (1999) (upholding the intermediary's ability to deny reopening on any specific issue).  If a hospital files an untimely appeal regarding some aspect of its NPR that the intermediary did not revise, the Board must dismiss for lack of jurisdiction.  *HCA Health Servs.*, 27 F.3d at 622.

### B.  Factual Background

St. Mary's "serves a large number of low-income individuals" and participates in the DSH program.  Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mot.") at 2, ECF No. 14-1.  The intermediary that oversees St. Mary's issued its 2010 NPR on August 2, 2013.  Admin. R. (A.R.) 479–81.  Two weeks later, St. Mary's petitioned the intermediary to reopen the NPR to revise the determination of "Medica[id] DSH eligible days and related capital calculation."[2]  A.R. 478.  The intermediary reopened the case for the limited purpose of "a review [of] the additional Medicaid eligible days identified in [St. Mary's] reopening request."  A.R. 477.  It then issued a revised NPR on November 27, 2013, in which it added additional Medicaid days and revised the rate of augmented reimbursements.  A.R. 464–66, 482.  The 180-day period during which St. Mary's could have appealed the original NPR to the Board expired in late January 2014.

---

[2] The request used the term "Medicare DSH eligible days," but surrounding usage and subsequent events indicate that St. Mary's sought to revise the calculation of Medi*caid*-eligible days.  Neither Party disputes that characterization.

On May 16, 2014—outside the period to appeal the original NPR but within the period to appeal the revised NPR—St. Mary's joined a group appeal arguing that HHS had failed to include "Dual Eligible Days," which are days of care to patients who may fall into both categories but who, the group argued, were excluded altogether.  A.R. 1243; Pl.'s Mot. at 4 (citing *Empire Health Found. v. Price*, 324 F. Supp. 3d 1134 (E.D. Wash. 2018) (invalidating regulation governing calculation of dual-eligible days on procedural grounds)).  Nearly four years later, the Board determined that it lacked jurisdiction over St. Mary's appeal because the issue it raised there was distinct from the issue it had raised to the intermediary during the 2013 re-opening of St. Mary's NPR.  A.R. 6–7.  The Board therefore dismissed St. Mary's from the group.  *Id.*  St. Mary's timely sought judicial review of the Board's jurisdictional decision, s*ee generally* Compl., and the Parties subsequently filed Cross-Motions for Summary Judgment.  *See generally* Pl.'s Mot. for Summ. J.; Def.'s Mot. for Summ. J.

## II.    Legal Standard

The Medicare Act authorizes the Court to review the Board's determination under "the standard of review set out in section 706 of the Administrative Procedure Act" (APA), 5 U.S.C. § 706.  *Humana, Inc. v. Heckler*, 758 F.2d 696, 698–99 (D.C. Cir. 1985) (citing 42 U.S.C. § 1395oo(f)(1)).  When reviewing the decision of an administrative board under the APA, "the district court does not perform its normal role but instead sits as an appellate tribunal."  *Cty. of L.A. v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999).  The normal summary-judgment standards of Federal Rule of Civil Procedure 56(c) do not apply; summary judgment instead "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Gentiva Healthcare Corp. v. Sebelius*, 857 F. Supp. 2d 1, 6 (D.D.C. 2012), *aff'd*, 723

F.3d 292 (D.C. Cir. 2013).  The Court may set aside the action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §§ 706(2)(A), (E).

St. Mary's contends that HHS's interpretations of the Medicare Act and its own regulations are entitled only to *Skidmore* deference, such that they serve as persuasive authority depending on "the thoroughness evident in [the interpretation's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all factors which give it power to persuade, if lacking power to control."  Pl.'s Mot. at 6 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  St. Mary's provides no explanation as to why it believes *Skidmore* is the appropriate standard.  *See id.*  In turn, HHS correctly notes that the D.C. Circuit has applied *Chevron* deference to HHS's interpretations of the Medicare Act and *Auer/Seminole Rock* deference to HHS's interpretations of its own regulations under the Act.  Def.'s Mem. of P. & A. in Supp. of Def.'s Cross Mot. for Summ. J., and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Mot.") at 10–11, ECF No. 15-1 (citing *HCA Health Servs.*, 27 F.3d at 616–17).  St. Mary's did not mention the issue in its responsive briefing and seems to have conceded the argument.  *See generally* Pl.'s Resp. in Opp'n to Def.'s Cross-Mot. for Summ. J. and Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 18.

That's for good reason, as HHS is correct.  "In examining the Board's construction of the Secretary's duly promulgated regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"  *HCA Health Servs.*, 27 F.3d at 616–17 (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414 (1945)); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997). The Court "then ask[s] in addition whether the Board's reading of the regulations is consistent with the statutory scheme it implements."  *HCA Health Servs.*, 27 F.3d at 617.  When HHS's

arguments rely upon its own interpretations of the Medicare Act, "[u]less Congress has spoken to the particular issue at hand, the Court defer[s] to the agency's interpretation whenever it is a permissible construction of the statute." *Id.* (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842–44 (1984)).

### III.    Analysis

The sole question here is whether the Board's jurisdictional determination was "arbitrary and capricious" or "contrary to law" in violation of the APA.  Pl.'s Mot. at 1–2.  That question begins and ends with two appellate decisions:  *HCA Health Services*, 27 F.3d 614, and *Little Company of Mary Hospital v. Sebelius*, 587 F.3d 849 (7th Cir. 2009).

In *HCA Health Services*, the D.C. Circuit upheld the regulatory scheme permitting only limited consideration of revised NPRs if the provider chooses not to appeal the original NPR within the permissible 180-day period.  27 F.3d at 622.  Here, St. Mary's did not appeal its August 2, 2013 NPR within 180 days.  Instead, it asked the intermediary to reopen the NPR under 42 C.F.R. § 405.1885 and to revise a specific finding regarding "Medica[id] DSH eligible days and related capital calculations."  A.R. 479–81.  The intermediary agreed to reopen the case for the limited purpose of "a review [of] the additional Medicaid eligible days identified in [St. Mary's] reopening request."  A.R. 477.  St. Mary's ultimately filed its appeal with the Board on May 16, 2014—within the time period to appeal the revised NPR, 42 C.F.R. § 405.1885, but after the deadline to appeal the original NPR, 42 U.S.C. § 1395oo(a).  A.R. 470.

Because St. Mary's appealed under the process established by HHS's regulations rather than the statutory appeals process, it is subject to the constraints those same regulations impose. "If a matter is reopened and a revised determination . . . is made, a revised determination . . . is appealable," 42 C.F.R. § 405.1885(a)(5), but *"[o]nly those matters that are specifically revised in a revised determination . . .* are within the scope of any appeal of the revised determination

. . . ," *id.* § 405.1889(b)(1) (emphasis added).  "Any matter that is not specifically revised (including any matter that was reopened but not revised) may not be considered in any appeal of the revised determination."  *Id.* § 405.1889(b)(2).  Because St. Mary's chose not to appeal directly to the Board at the outset, its subsequent appeal was limited to a review of the changes the intermediary *actually* made in its reopening.  *See Your Home*, 525 U.S. at 456–57 (upholding the intermediary's ability to deny reopening on any specific issue).

In *HCA Health Services*, the provider attempted to appeal several issues to the Board after receiving a revised NPR even though it had not raised them to the intermediary.  27 F.3d at 615.  The Board found that it lacked jurisdiction under the regulations.  *Id.*  The provider challenged both the regulations and HHS's interpretation, but the D.C. Circuit agreed that the Board lacked jurisdiction.  *Id.* at 617–22.  It found nothing to the contrary in the statute and agreed that HHS's interpretation of its own regulations was reasonable.  *Id.*

To avoid that precedent, St. Mary's concedes that the regulations apply but argues that the Board's determination of what "issues" were raised in the reopening sits at too low a level of generality.  Pl.'s Reply at 5–6.  In St. Mary's view, the revised NPR adjusted the DSH calculation in its entirety.  *Id.*  Because the intermediary adjusted its calculation of the Medicaid fraction, it revised the total number of days that qualified toward St. Mary's service to low-income patients.  *Id.*  And the issue that St. Mary's appealed to the Board was the calculation of "Dual Eligible Days . . . *in the numerator of the Medicare or Medicaid fraction.*"  *Id.* (quoting A.R. 1252) (emphasis added).  Because changing either numerator affects the end result, St. Mary's sees them as in one in the same issue.  *Id.*  St. Mary's therefore argues that the Board did, in fact, have jurisdiction over its appeal and improperly construed the "issue" in question too narrowly under HHS regulations.  *Id.*

That argument runs squarely into the Seventh Circuit's decision in *Little Company of Mary*. There, a provider challenged the calculation of both the Medicaid and Medicare fractions in the DSH calculation, but the intermediary agreed to reconsider only the Medicaid numbers. 587 F.3d at 852. The provider appealed both issues to the Board, but the Board concluded that it lacked jurisdiction over the Medicare calculations because the intermediary had declined to reopen them. *Id.* The Seventh Circuit upheld the differentiation of the two fractions as separate "issues" for purposes of the regulation and affirmed summary judgment for HHS. *Id.* at 855–56.

Here, St. Mary's never raised the issue of "dual eligible days" before the intermediary, which thus had no chance to consider the issue or to revise the calculation of either the Medicare or Medicaid fractions to include them. Instead, the intermediary recalculated just the Medicaid-eligible days, Def.'s Mot. at 17–20, and the Board decided that issue is the only one over which it had jurisdiction. Relying on *Little Company of Mary*, HHS contends that the Board's decision (and how narrowly or broadly to construe an "issue" under the regulations) is entitled to deference. *Id.* at 14–15. HHS points to several decisions beyond *Little Company of Mary* that have reached the same conclusion. *See id.* at 18–20 (citing *Anaheim Mem. Hosp. v. Shalala*, 130 F.3d 845 (9th Cir. 1997) (holding that an intermediary's adjustment of one aspect of the NPR's "routine cost limit" section does not open the entire section to reconsideration on appeal to the Board); *Emanuel Med. Ctr., Inc. v. Sebelius*, 37 F. Supp. 3d 348, 360 (D.D.C. 2014) (same); *Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20, 55–57 (D.D.C. 2008) (distinguishing between Medicare and Medicaid fractions); *St. Thomas Hosp. v. Sebelius*, 705 F. Supp. 2d 905, 914–15 (M.D. Tenn. 2010) (distinguishing between various factors within the Medicaid fraction)). St. Mary's did not address this argument whatsoever in its Reply brief, nor did it ever mention *Little Company of Mary* or any of the other cases on which HHS relies. *See generally* Pl.'s Reply.

After briefing concluded on these Motions, Judge Moss held that when an intermediary revises some portion of the DSH calculation, the revision does not entitle the provider to appeal *any* other portion affecting the DSH calculation.  *See* Def.'s Not. of Supp. Auth., ECF No. 21 (citing *McLaren Flint*, 2020 WL 2838566).  There, the intermediary unilaterally reopened the NPR to "include additional Medicaid days."  2020 WL 2838566 at *4.  The provider then joined a group appeal arguing "that Medicare [Part C days] should be counted in the Medicaid Fraction rather than within the Medicare Fraction."  *Id.*  Sure enough, the Board dismissed McLaren Flint from the group after concluding that it had no jurisdiction over the question because the intermediary had only made "an adjustment to include additional Medicaid days to be included in the DSH calculation."  *Id.* at 5 (internal quotation omitted).

McLaren Flint argued before Judge Moss, as St. Mary's does here, that any reopening of the DSH calculation opens the door to appeals on any other part of the DSH calculation.  *Id.* at 8.  Judge Moss rejected that argument:

> As Plaintiff acknowledged at oral argument, it has found no authority, and the Court is aware of none, in which a court has held the DSH calculation is a single issue for the purposes of the issue-specific approach; rather, in all of the cases identified by the parties, and by the Court's own independent research, courts have uniformly held that the DSH payment is sufficiently complex to implicate an array of separate issues.

*Id.* (citing *Little Co. of Mary*, 587 F.3d at 854–56).  Judge Moss went on to explain that "the complexity of the Medicaid fraction and the interest in administrative finality weigh heavily in favor of permitting the Board, in its discretion, to treat different components within each fraction as separate issues."  *Id.* (citing *Franciscan St. Margaret Health v. Azar*, 407 F. Supp. 3d 28, 34 (D.D.C. 2019) (distinguishing between various components within the Medicaid fraction)) (other citations omitted).  St. Mary's has provided no argument (whether in response to HHS's notice or otherwise) for why Judge Moss's decision is incorrect.  Its silence is telling.

Here, as in *McLaren Flint*, St. Mary's has identified no authority or principle to support its claim that HHS "clearly had jurisdiction over [St. Mary's] appeal." Pl.'s Reply at 5. The intermediary revised a single aspect of the NPR, but it did not consider the question of "dual eligible days" within either the Medicaid or Medicare fractions. A.R. 477. Because "[o]nly those matters that are specifically revised in a revised determination . . . are within the scope of any appeal," 42 C.F.R. § 405.1889, the Board reasonably concluded that St. Mary's appeal on the question of "dual eligible days" was a separate matter and was therefore outside the Board's jurisdiction. Because the Court resolves the Cross-Motions on that basis, it does not reach the Parties' other arguments about the procedural rules governing group appeals and expedited judicial review or how the issue of "dual eligible days" might affect the Medicare or Medicaid fractions either separately or together. *See* Def.'s Mot. at 12–15; Pl.'s Reply at 6–8.

## IV. Conclusion

As courts here and elsewhere have repeatedly concluded, the Board reasonably determined under HHS regulations that it has no jurisdiction to consider appeals from a revised Notice of Provider Reimbursement unless the appeal raises the same questions the intermediary considered and actually revised in its reopening. 42 C.F.R. § 405.1889. St. Mary's did not appeal its original Notice within the prescribed time period and so forfeited the opportunity to raise new matters before the Board, even if they were tangentially related to intermediary's revisions. The Court therefore grants summary judgment to HHS and denies it to St. Mary's. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: July 20, 2020

_____
CARL J. NICHOLS
United States District Judge

11